UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL TORRES,

    Petitioner,

v.

DUNCAN MACLAREN,

    Respondent.

Case No. 2:14-12331
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1]**

    This case implicates the proper interpretation of *Harrington v. Richter*, 562 U.S. 86 (2011). There, the Supreme Court held that when a state court denies a prisoner's claim for relief "on the merits" under 28 U.S.C. § 2254(d), but provides no explanation for doing so, federal courts later considering that claim as a basis for a writ of habeas corpus are to hypothesize reasons for the state court's decision and ask whether any of those reasons involve an unreasonable application of federal law. *See Richter*, 562 U.S. at 102. But what about when, as here, a state court provides an explanation for rejecting a claim, but the explanation is unreasonable? Does a federal habeas court presented with that same claim look past the unreasonable explanation and invoke *Richter*'s hypothetical-reasons approach? Or does it limit itself to the state court's explanation, conclude that its decision "involved" an unreasonable application of federal law, and proceed to review the claim of constitutional error *de novo*? In a recent denial of certiorari, two justices of the Supreme Court stressed that, where the state court provides an explanation for its decision, a federal court applying § 2254(d) scrutinizes that explanation, not hypothetical ones. *Hittson v. Chatman*, 135 S. Ct. 2126, 2127–28, 192 L. Ed. 2d 887 (2015) (Ginsburg, J., concurring in denial of cert.). But the Sixth Circuit Court of Appeals

has said that under *Richter*, "so long as the state courts reach a *decision* that reasonably applies Supreme Court precedent—however deficient some of the court's reasoning might be—we must deny the writ." *Davis v. Carpenter*, 798 F.3d 468, 475 (6th Cir. 2015); *see also Holland v. Rivard*, 800 F.3d 224, 236–37 (6th Cir. 2015).

This Court must follow the Sixth Circuit Court of Appeals' interpretation of *Richter*. And under the deferential, hypothetical-reasons approach, Paul Torres's petition for a writ of habeas corpus must be denied.

## I.

### A.

In 2009, a jury convicted Torres of two counts of delivering (or manufacturing) less than 50 grams of cocaine, one count of possession with intent to deliver less than 50 grams of cocaine, and one count of maintaining a drug house.

In December 2009, Torres appeared before Michigan 39th Judicial Circuit Judge Margaret M.S. Noe for sentencing. The guideline sentence was a minimum term of imprisonment of 10 to 23 months for each of the two delivery convictions and the same for the one possession conviction. (*See* Dkt. 8 at Pg ID 233, 238.) Noting her sentencing discretion under Michigan Compiled Laws §§ 333.7401(3) and 333.7413(2), Judge Noe imposed a minimum term of imprisonment twice that of the guideline for the delivery and possession convictions, i.e., 46 months each, and, more significantly, ordered that the three terms run consecutively. (*See* Dkt. 8 at Pg ID 238, 310, 315, 321.) The result was that Torres was to spend a minimum of 138 months in jail as opposed to a minimum of 46 months had the three sentences been concurrent. (*See* Dkt. 8 at Pg ID 310, 315, 321.)

**B.**

Torres appealed. One of his arguments was that his trial counsel had been constitutionally ineffective. In particular, Torres claimed that, for one of the charged offenses, Judge Noe had erroneously provided instructions pertaining to possession with intent to deliver instead of delivery of cocaine and that his counsel had been ineffective for failing to object to the improper instructions. (Dkt. 8 at Pg ID 450, 455.) Torres did not claim that his counsel was ineffective for any other reason.

The Michigan Court of Appeals affirmed. *See generally People v. Torres*, No. 296025, 2011 WL 1005163 (Mich. Ct. App. Mar. 22, 2011). As to Torres's ineffective-assistance claim, it reasoned that "the trial court did not err in instructing the jury on the elements of possession with intent to deliver," and even if it had, Torres could not show that the "error affected the outcome of the proceedings." *Id.* at *4. It followed that trial counsel's performance did not amount to a Sixth Amendment violation: he had no obligation to make a groundless objection and, even if he should have objected, Torres could not show he suffered prejudice from counsel's failure to do so. *Id.*

Torres then sought leave to appeal in the Michigan Supreme Court. As before the Michigan Court of Appeals, Torres claimed that his trial counsel had been ineffective for failing to object to the possession instructions for one charge. (*See* Dkt. 8 at Pg ID 386–90.) But Torres also raised two new ineffective-assistance claims: he asserted that trial counsel had been ineffective for failing to request a cautionary instruction about testimony from an informant with a drug addiction and that both trial and appellate counsel had been infective for failing to challenge the scoring of certain sentencing variables. (Dkt. 8 at Pg ID 387–90.)

The Michigan Supreme Court denied leave. *People v. Torres*, 804 N.W.2d 562 (Mich. 2011).

## C.

Having completed his direct appeal, Torres returned to the state trial court. He sought relief from judgment and again asserted ineffective assistance of trial and appellate counsel. But Torres did not re-raise the claim he presented to the Michigan Court of Appeals (that trial counsel had been ineffective for failing to object to a possession as opposed to a delivery instruction). Instead, as in his request for leave in the Michigan Supreme Court, Torres asserted that trial and appellate counsel were ineffective for failing to contest the scoring of certain sentencing variables and for failing to request an addict-informer instruction. (Dkt. 8 at Pg ID 258–65, 271–73.)

More significant to this case is that Torres also raised a new ineffective-assistance claim: that his trial counsel had been constitutionally ineffective during plea negotiations. Torres asserted—in an affidavit—that his trial counsel informed him that if he pled guilty to one count of delivering less than 50 grams of cocaine, the prosecutor would drop the other three counts. (Dkt. 8 at Pg ID 278–79.) Torres further averred that his trial counsel advised him to reject the deal because, if he was convicted, he would be sentenced to concurrent prison terms; in other words, Torres claimed his counsel thought a conviction on three counts would result in no more prison time than pleading to one. (Dkt. 8 at Pg ID 278–79.) Said Torres: "[my counsel] did not advise me that my sentences . . . may run consecutive or may be enhanced" and "[t]he first time I became aware of my sentences running consecutive[] or being enhanced was during my meeting with the probation officer, . . . who prepared the [presentence investigation report] for my sentencing date." (*Id.* at Pg ID 279.)

Without holding a hearing or directing the State to respond to Torres's motion, Judge Noe denied relief from judgment in a written order. As to Torres's three ineffective-assistance-of-counsel claims, Judge Noe first summarized them:

> Defendant argues in arguments I, II and IV that he was denied effective assistance of trial counsel. *He argues in argument I, that his trial counsel was ineffective in advising him about an offered plea agreement*. In argument II he argues that his trial counsel failed to adequately object to the trial court's scoring of the sentencing guidelines. In argument IV, the Defendant argues that his trial counsel was ineffective for failing to request a specific jury instruction.

(Dkt. 8 at Pg ID 297, *People v. Torres*, Nos. 09-14276, 09-14277, 09-14288 (Mich. 39th Cir. Ct. July 13, 2012 (emphasis added).) She then denied these claims as follows:

> This Court finds that the issue of ineffectiveness of trial counsel, was raised by the Defendant in his appeal to the Court of Appeals and in his request for hearing before the Michigan Supreme Court. The Court of Appeals ruled that trial counsel was not ineffective in it's [*sic*] opinion dated March 22, 2011. The Court also specifically ruled that there was no appealable error in the jury instructions provided at trial. The Michigan Supreme Court denied hearing of the Defendant's claim by order dated November 2, 2011. As the issue of ineffective assistance of trial counsel has been unsuccessfully appealed by the Defendant, this Court finds no additional grounds warranting relief from judgment.

(*Id.* at Pg ID 298.)

Torres attempted to appeal Judge Noe's denial to the Michigan Court of Appeals. He asked the appellate court to remand the case for an evidentiary hearing, explaining that although he raised an ineffective assistance claim in the Michigan Court of Appeals, that claim was only based on trial counsel's failure to object to the jury instruction regarding possession instead of delivery. (Dkt. 8 at Pg ID 503.)

The Michigan Court of Appeals denied leave. (Dkt. 8 at Pg ID 485, *People v. Torres*, No. 321681 (Mich. Ct. App. May 16, 2013).)

The Michigan Supreme Court did the same. *People v. Torres*, 839 N.W.2d 466 (Mich. Nov. 25, 2013).

5

**D.**

That prompted Torres to seek relief in federal court. His petition for a writ of habeas corpus filed with this Court raises one claim: that his trial counsel was constitutionally ineffective during plea negotiations. (Dkt. 1, Pet. at Pg ID 5.) In support, he relies on the brief he filed in support of his state-court motion for relief from judgment, including the affidavit summarized above. (*Id.*)

**II.**

Under the Antiterrorism and Effective Death Penalty Act of 1996, if a state court adjudicates a claim "on the merits," a federal court later considering that claim as the basis for a writ of habeas corpus must not grant the writ "unless" the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" or "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

It is apparent from Judge Noe's opinion that she adjudicated Torres's habeas claim "on the merits." This Court should presume that was the case, *Harrington v. Richter*, 562 U.S. 86, 99 (2011), and nothing rebuts the presumption. She explicitly acknowledged in her order Torres's claim about his counsel's performance during plea negotiations. (Dkt. 8 at Pg ID 297.) So the Court cannot conclude that she overlooked that claim. *See Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1097, 185 L. Ed. 2d 105 (2013) (noting that where "federal claim is rejected as a result of sheer inadvertence," the decision is not on the merits within the meaning of § 2254(d)). And Judge Noe invoked no procedural rule. *See Richter*, 562 U.S. at 99. As such, § 2254(d)

applies to Torres's habeas corpus claim that counsel was ineffective in advising him to reject a plea deal.

The question thus becomes whether Torres has shown that Judge Noe's decision "was based on an unreasonable determination of the facts" or "was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d).

In conducting the § 2254(d) inquiry, the Court is limited to the record that was before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). But if Torres were to clear the § 2254(d) hurdle, this Court would then evaluate his claim that his counsel was constitutionally ineffective during plea negotiations *de novo*. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires."). And, in performing this second step, this Court would be permitted to expand the record (albeit, possibly without an evidentiary hearing, *see* 28 U.S.C. § 2254(e)(2)). *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014); *Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012); *see also Harris v. Haeberlin*, 752 F.3d 1054, 1057 (6th Cir. 2014); *Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013); *Mosley v. Atchison*, 689 F.3d 838, 841–42 (7th Cir. 2012). Given the current state of the record on the issue of ineffective assistance during plea negotiations—Torres's uncorroborated affidavit is the whole of it—the Court would likely expand the record. It would be helpful to have trial counsel's side of the story as well as the prosecutor's take. *Cf. Stitts v. Wilson*, 713 F.3d 887, 896–97 (7th Cir. 2013); *Mosley*, 689 F.3d at 841–42, 854; *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001) (finding counsel constitutionally ineffective where he erroneously

7

advised petitioner during plea negotiations that his term of imprisonment would be the same if he pled or if lost at trial because, in the second scenario, his sentences would run concurrent).

Torres has cleared § 2254(d)—if the Court limits its inquiry to the explanation that Judge Noe provided. Judge Noe assumed that whatever basis Torres had for claiming his trial counsel was ineffective lacked merit because the Michigan appellate courts had previously addressed and rejected "the issue" of trial counsel's effectiveness. (Dkt. 8 at Pg ID 298 ("This Court finds that *the issue* of ineffectiveness of trial counsel[] was raised by the Defendant in his appeal to the Court of Appeals and in his request for hearing before the Michigan Supreme Court. . . . *As the issue* of ineffective assistance of trial counsel has been unsuccessfully appealed by the Defendant, this Court finds no additional grounds warranting relief from judgment." (emphases added)).) The obvious flaw in this reasoning is that counsel can be ineffective in more than one way. And Torres did not present his claim that his counsel was ineffective during plea negotiations to Michigan's appellate courts. Thus, Judge Noe's adherence to those courts' resolution of the "issue" of ineffective assistance of counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103.

But should this Court should limit its application of § 2254(d) to the explanation that Judge Noe provided? In *Harrington v. Richter*, the Supreme Court was presented with a situation where the claim for a writ of habeas corpus had been decided on the merits by a state court, but the state court provided *no* explanation for its decision. *See* 526 U.S. at 96–97. The Supreme Court directed federal courts dealing with that situation to determine what arguments or theories "could have" supported the state court's decision, and then ask whether those hypothetical "arguments or theories are inconsistent with the holding in a prior decision of this Court." 562

U.S. at 102. And in *Johnson*, the Supreme Court extended *Richter* to the situation where a "state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." 133 S. Ct. at 1091.

There is good reason to think that *Richter*'s hypothetical-reasons approach is inapplicable here because this is not a situation where the state court rejected a claim later presented to a federal habeas corpus court without providing an explanation for that rejection; instead, the state court provided an unreasonable explanation for rejecting the claim. Indeed, Justices Ruth Bader Ginsburg and Elena Kagan believe that *Richter*'s hypothetical approach does not apply when the state court explains its decision: "[Performing the § 2254(d) analysis] is straightforward when the last state court to decide a claim has issued an opinion explaining its decision. In that situation, a federal habeas court simply evaluates deferentially the specific reasons set out by the state court." *Hittson v. Chatman*, — U.S. —, 135 S. Ct. 2126, 192 L. Ed. 2d 887 (2015) (Ginsburg, J., concurring in denial of cert.). The two Justices have explained that, in *Richter*, a "hypothetical inquiry was necessary . . . because no state court 'opinion explain[ed] the reasons relief ha[d] been denied.'" *Id.* (quoting *Richter*, 562 U.S. at 98). "In that circumstance, a federal habeas court can assess whether the state court's decision '*involved* an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1) (emphasis added), only by hypothesizing reasons that might have supported it." *Id.* "But," said Justices Ginsburg and Kagan, "*Richter* makes clear that where the state court's real reasons can be ascertained, the §2254(d) analysis can and should be based on the actual 'arguments or theories [that] supported . . . the state court's decision.'" *Hittson*, 135 S. Ct. at 2126 (quoting *Richter*, 562 U.S. at 102); *see also Kubsch v. Neal*, 800 F.3d 783, 804–06 (7th Cir. 2015).

9

The Sixth Circuit Court of Appeals has said that *Richter* held otherwise. In *Holland v. Rivard*, 800 F.3d 224, 235–36 (6th Cir. 2015), the Court noted that "it is the decision of the state court, not its reasoning, to which AEDPA deference applies." The Court reasoned, "though a state court decision unaccompanied by any explanation differs from a state court decision based on erroneous reasoning, the [Supreme] Court's explanation in *Richter* suggests that this is not a meaningful distinction; a habeas petitioner must show that there was '*no reasonable basis* for the state court to deny relief . . . *whether or not* the state court reveals [its reasoning].'" *Id.* at 235 (emphases in original) (quoting *Richter*, 562 U.S. at 98); *cf. Ricther*, 562 U.S. at 98 ("whether or not the state court reveals which of the elements in a multipart claim it found insufficient").

And while the statements in *Holland* were dicta, *see* 800 F.3d at 237, similar reasoning in *Davis v. Carpenter*, 798 F.3d 468 (6th Cir. 2015), appears not to be. There, after being convicted of murdering his girlfriend's infant child, Davis sought post-conviction relief in state court. *Id.* at 471. He claimed that his trial counsel had been constitutionally ineffective because he had failed to retain an expert who would testify that the child's skull fractures were consistent with an accident. *Id.* At the evidentiary hearing on the claim, "Davis called Dr. Janice Ophoven to the stand. She said that, in her opinion, an accident could have caused [the child's] injuries. She also opined that other doctors in her field would have been willing to say the same thing." *Id.* at 471–72. After the state courts denied the claim, Davis sought habeas corpus relief which the federal district court denied. *Id.* at 472. Davis appealed.

The Sixth Circuit, noting that Davis's counsel had put in some effort to obtain an expert, concluded that § 2254(d) barred relief: "In the absence of any guidance from the Supreme Court as to how hard an attorney must work to find an expert, . . . a fairminded jurist could conclude that [Davis's counsel's] efforts fell in the permissible zone between 'best practices' and outright

10

incompetence." *Id.* at 474. In resisting this conclusion, Davis argued that the state court had failed to mention Ophoven's testimony that there were experts willing to testify that the child's injuries were consistent with an accident. *Id.* at 475. The Sixth Circuit rejected this argument, explaining that under *Richter*, federal courts do not scrutinize the state court's rationale for its decision:

> Finally, Davis contends the state courts "totally disregarded" Ophoven's testimony that [Davis's counsel] could have found an expert. The implication, Davis seems to suggest, is that we should give the state-court decision less deference than *Harrington* [*v. Richter*] otherwise requires. But *Harrington* itself refutes that suggestion. In habeas cases, we review the state court's "decision," not the court's intermediate reasoning. *See Harrington*, 562 U.S. at 101, 131 S.Ct. 770. For our task is to "determine what arguments or theories supported" the state-court decision or "*could have supported*" it; and then to determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. *Id.* at 102, 131 S.Ct. 770 (emphasis added).

*Davis*, 798 F.3d at 475. "Thus," the Sixth Circuit concluded, "so long as the state courts reach a *decision* that reasonably applies Supreme Court precedent—*however deficient some of the court's reasoning might be*—we must deny the writ." *Id.* (second emphasis added).

In short, under Justices Ginsburg and Kagan's understanding of *Richter*, this Court would not only review the issue of counsel's effectiveness during plea negotiations *de novo* but also likely would expand the record to be sure it gets the answer right. But under *Davis*'s application of *Richter*, this Court must not only hypothesize explanations for rejecting Torres's ineffective-assistance claim, it must then ask whether any rational jurist could think that one of those explanations correctly applied federal law.

This Court must follow Sixth Circuit precedent. And, applying *Davis*, Torres's petition must be denied. Although Judge Noe's explanation for denying Torres's claim was unreasonable, the Court can think of a reasonable one: that Torres's affidavit is not credible. In particular, at

11

sentencing—which was after Torres had learned that the presentence report recommended enhancement and consecutive terms of imprisonment—Torres stated that he was satisfied with counsel's performance and that he had no challenges to the "accuracy or relevancy" of the report. (Dkt. 8 at Pg ID 232.) A reasonable jurist could think that if Torres's counsel in fact told him that his sentences would run concurrent, he would have told Judge Noe that the report was not consistent with counsel's advice. But he did not. Moreover, on direct appeal, Torres never raised the claim that his trial counsel had given him constitutionally deficient advice during plea negotiations. True, he avers that his appellate counsel refused to discuss the claim with him. (*See* Dkt. 8-10 at Pg ID 279.) But this does not explain why, in filing his *pro per* motion for leave in the Michigan Supreme Court, Torres did not raise the claim himself despite raising other ineffective-assistance claims that appellate counsel had not raised. (*See* Dkt. 8 at Pg ID 386–90.) In all, there is enough for a reasonable jurist to think that Torres's affidavit is not credible. So Torres cannot clear § 2254(d)'s bar.

Torres's petition for a writ of habeas corpus is thus DENIED. But the Court GRANTS Torres a certificate of appealability and GRANTS Torres leave to proceed on appeal without prepaying the corresponding filing fee.

SO ORDERED.

Dated: May 2, 2016                    s/Laurie J. Michelson
                                       LAURIE J. MICHELSON
                                       U.S. DISTRICT JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon Paul Torres and Counsel of Record on this date.

Dated: May 2, 2016                    s/ Lisa C. Bartlett      for Jane Johnson
                                       Case Manager