UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL TORRES,

    Petitioner,

v.

DUNCAN MACLAREN,

    Respondent.

Case No. 2:14-12331
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    In 2009, Paul Torres was caught selling ten grams of cocaine and possessing, with the intent to sell, another seven grams. Prior to trial, the prosecution offered a deal that would have likely resulted in Torres being eligible for parole after 10 to 23 months in prison. But Torres rejected that offer. The reason? According to Torres, his trial counsel advised him that whether he pleaded guilty or whether he went to trial and lost, he would receive essentially the same sentence. As it turned out, this was very wrong. After being convicted, Torres is serving a minimum prison sentence of 11.5 years; his maximum is more than life (120 years).

    Torres now seeks a writ of habeas corpus from this Court. While Torres' assertion about his trial counsel's advice is troubling, it is also troubling that no legal claim based on the alleged advice was brought until a year-and-a-half after Torres was sentenced. And Torres has offered neither a clear nor consistent explanation for this delay. Thus, and as explained below, Torres has not shown he is entitled to a writ.

# I.

## A.

In the summer of 2009, Torres faced charges in four criminal cases. In two of them he was charged with delivering less than 50 grams of cocaine (about three and seven grams, respectively). *See* Mich. Comp. Laws § 333.7401(2)(a)(iv). (*See* R. 8, PageID.137–38, 161, 219.) In a third case, he was charged under the same statutory provision but for possession with intent to deliver less than 50 grams of cocaine (about seven grams). (*See* R. 8, PageID.137–38, 161, 219.) That case also included a charge of maintaining a drug house, Mich. Comp. Laws § 333.7405(d). (*See* R. 8, PageID.137–38, 219.) The two delivery charges were based on two sales to a confidential informant within days of each other; the possession-with-intent-to-deliver and drug-house charges stemmed from a search following the sales. (*See* R. 8, PageID.161.) The total amount of cocaine involved from the two sales and recovered from the search was under 18 grams. (*See* R. 8, PageID.161) The fourth case, which is not at issue in this habeas corpus proceeding, involved armed robbery charges. (R. 8, PageID.133, 224.)

Torres retained attorney Asad Farah to defend him in all four cases. Unknown to Torres, Farah was struggling as an attorney. About six months prior to representing Torres, the FBI had been involved in Farah's split with his law partner. (R. 30, PageID.744–745.) And during his representation of Torres, Farah was called to answer a grievance about how he handled a 2002 civil case. (R. 30, PageID.800.) The result of that proceeding was a suspension of Farah's Ohio law license unless he underwent mental-health treatment. (R. 30, PageID.830.) Farah's Michigan license was later suspended. (R. 30, PageID.805.) And just a year after his representation of Torres, Farah had, quite literally, walked away from the practice of law. (R. 30, PageID.751–752.) Farah later explained, "[I was] [d]isenfranchised with the entire practice of law and the entire legal

system. When I can walk into a court and give 12 people B.S. and they let a murderer loose, I just can't do it no more. That child molester's out there because juries are sympathetic to a certain tone. Couldn't do it anymore. I had to face my kids. I couldn't do it anymore." (R. 30, PageID.770.)

Before the three drug cases reached trial, the prosecutor twice offered Torres a plea deal. (R. 30, PageID.732.) The first came early in the proceedings, before the preliminary examination. Under the terms of that offer, if Torres pleaded guilty to one count of delivering less than 50 grams of cocaine, the prosecutor would dismiss the other three drug charges. (R. 30, PageID.732.) Had Torres accepted this offer, the guideline range for his minimum sentence would have been 10 to 23 months and his maximum sentence would have been 20 years. (*See id.*) In other words, if the judge sentenced within the guidelines, Torres would have been eligible for parole after, at worst, 23 months. The second offer was not as good as the first but still substantially reduced Torres' potential jail time. Under the second offer, Torres needed to plead guilty to just one delivery charge (with one narcotics supplement). If Torres accepted this offer, the guideline range for his minimum sentence would have been 20 to 46 months and his maximum would have been 40 years. (*See id.*)

According to Torres, Farah advised him against accepting one or both of these offers. Torres avers: "The state was going to dismiss the two counts of Delivery/Manufacture of Cocaine and the one of Maintaining a Drug House if I plead guilty to one count of Delivery/Manufacture of Cocaine less than 50 grams. Mr. Farah advised me to reject the plea offer because all three counts of Delivery/Manufacture, including the one of Mainta[in]ing a Drug House will run concurrent if I lost at trial and I will receive the same amount of time as by pleading guilty." (R. 8, PageID.278–279; *see also* R. 30, PageID.727.) In other words, Torres says that Farah effectively told him that he had nothing to gain by pleading guilty because a jury conviction would expose him to the same prison time.

3

If that was the advice that Farah gave Torres, it was surely bad advice. Under Michigan law, the judge had discretion to run Torres' sentences for two delivery convictions and one possession conviction one after the other, i.e., consecutively. *See* Mich. Comp. Laws § 333.7401(3); *People v. Davenport*, 522 N.W.2d 339, 341 (1994). So Torres' sentence could be three times longer following a jury conviction than under the plea offers. Moreover, just over a month after Torres' preliminary examination, the Michigan Supreme Court held that a sentencing statute for repeat drug offenses permitted the judge to double both the minimum and maximum sentence. *People v. Lowe*, 773 N.W.2d 1, 8 (Mich. 2009). And Torres was a habitual offender, second notice. (R. 8, PageID.225.) Thus, contrary to Farah's alleged advice, if Torres was convicted following a trial, Torres' minimum sentence could have been as much as 138 months (doubling the 23 months to 46 and then running the three consecutive) and his maximum could have been as much as 120 years. In other words, Torres' post-trial exposure was six or three times more than under the first and second plea offer, respectively.

Torres went to trial. Apparently, the strategy (or at least part of the strategy) was to call into question the credibility of the confidential informant involved in the two small sales. (*See* R. 8, PageID.161.) The strategy did not work. A jury convicted Torres of all four drug charges.

At sentencing, Torres' worst-case scenario came to be. Judge Margret Noe doubled the minimum and maximum sentence on each of the three delivery charges and ran them consecutively. Torres was thus sentenced to a minimum prison term of 138 months (11.5 years) and a maximum prison term of 120 years. (R. 8, PageID.239.) (The sentence on the drug-house conviction was made concurrent. (R. 8, PageID.239.) And in the armed-robbery case, Torres pleaded guilty to a lesser offense and was sentenced to a minimum of six years and four months and a maximum of ten years.)

**B.**

Torres appealed. His appointed attorney was William Archer. Archer's notes, made immediately after his one meeting with Torres, state in part, "Torres . . . has indicated that he would be very happy if I was able to get his sentences corrected or have a resentencing. The sentencing guidelines in his case were 10 to 23 months on delivery, 2 counts[,] and 2 to 21 months on maintaining a drug house and he agrees with the computations." (R. 30, PageID.736.) "The problem," Archer continued, "is that the judge doubled both the minimum and the maximum penalty under *People v Lo[w]e*, #137284 and then sentenced Torres consecutively on each count so in effect he had a double sentencing on each of the counts. I will be reviewing *People v Lo[w]e* to see what the status of the case is and if in fact the doubling of the minimum sentence conflicts with the sentencing guidelines." (R. 30, PageID.736.) The notes make no reference to any advice from Farah.

About six days after his meeting with Torres, Archer filed an appeal brief on Torres' behalf. (R. 8, PageID.429–462.) Among other claims, Archer asserted that Farah had been constitutionally ineffective in failing to object to a jury instruction. (R. 8, PageID.453.) As to Torres' sentence, Archer asserted that the trial judge abused her discretion by doubling the sentences and then running them consecutive. (R. 8, PageID.459.) Archer did not raise a claim that Farah had been constitutionally ineffective in advising Torres about accepting or rejecting plea offers. Archer sent a copy of the filed appeal brief to Torres. He did not receive any comments.

The Michigan Court of Appeals rejected Torres' arguments. *People v. Torres*, No. 296025, 2011 WL 1005163, at *7 (Mich. Ct. App. Mar. 22, 2011).

Torres then sought leave to appeal from the Michigan Supreme Court. Torres' *pro per* application for leave raised three ineffective-assistance-of-trial-counsel claims, including two that

5

Archer had not presented to the Michigan Court of Appeals. (*See* R. 8, PageID.386–389.) None involved Farah's plea advice.

Although the Michigan Supreme Court denied leave, one justice said she would remand for resentencing. *People v. Torres*, 804 N.W.2d 562 (Mich. 2011).

## C.

Torres then filed a motion for relief from judgment under Michigan Court Rule 6.500. For the first time, Torres asserted that Farah had been ineffective by advising him that he would receive the same amount of time by accepting a plea offer as following a conviction at trial. (R. 8, PageID.252–257, 279.)

Judge Noe (the same judge that had sentenced Torres) rejected Torres' claims about Farah's representation. Despite that Torres had never raised the claim on direct appeal, Judge Noe reasoned as follows:

> This Court finds that the issue of ineffectiveness of trial counsel, was raised by the Defendant in his appeal to the Court of Appeals and in his request for hearing before the Michigan Supreme Court. The Court of Appeals ruled that trial counsel was not ineffective in it's [*sic*] opinion dated March 22, 2011. The Court also specifically ruled that there was no appealable error in the jury instructions provided at trial. The Michigan Supreme Court denied hearing of the Defendant's claim by order dated November 2, 2011. As the issue of ineffective assistance of trial counsel has been unsuccessfully appealed by the Defendant, this Court finds no additional grounds warranting relief from judgment.

(R. 8, PageID.297); *People v. Torres*, Nos. 09-14276, 09-14277, 09-14288 (Mich. 39th Cir. Ct. July 13, 2012).

Neither the Michigan Court of Appeals nor the Michigan Supreme Court granted Torres leave to appeal Judge Noe's denial of Torres' Rule 6.500 motion.

## D.

Torres then filed the petition for a writ of habeas corpus now pending before this Court.

Noting that Judge Noe invoked no procedural rule and plainly did not overlook Torres' claim about Farah's advice, it was this Court's opinion that Judge Noe had adjudicated that claim "on the merits" and thus 28 U.S.C. § 2254(d) provided the standard of review. *See Torres v. MacLaren*, 184 F. Supp. 3d 587, 591 (E.D. Mich. 2016). But, said the Court, Judge Noe's ruling on Torres' claim about Farah's plea advice was "unreasonable" as that term is used in § 2254(d) as she apparently thought that counsel's ineffectiveness was a single "issue." *See id.* at 591–92. The Court further explained that once a federal court finds a state court's articulated rationale "unreasonable," it might well be the case that the petitioner cleared § 2254(d) and review of the claim is *de novo*. *Id.* at 592. But the Court felt bound by Sixth Circuit precedent indicating (if not holding) that even if the articulated rationale is "unreasonable," *Harrington v. Richter* required federal courts to hypothesize still other rationales and then evaluate the reasonableness of those rationales. *Id.* at 593–94. Because there was a reasonable way to reject Torres' claim about Farah's advice—namely, that the evidence did not support Torres' claim that the advice was ever given—this Court denied Torres habeas corpus relief. *Id.* at 594.

Torres appealed to the Sixth Circuit Court of Appeals. He argued, among other things, that Judge Noe had not adjudicated the merits of his claim about Farah's plea advice. And the Warden—for the very first time—argued that "[t]he state court's holding that the Michigan Court of Appeals' prior adjudication of the claim barred review was not a decision on the merits of the claim—rather, it was a decision that it could not reach the merits of the claim." So the Sixth Circuit ruled as follows: "Torres argues, and the State concedes, that Torres's claim of ineffective assistance of counsel during plea bargaining was never adjudicated on the merits by a state court as required for deference under 28 U.S.C. § 2254(d). Therefore, the district court should not have applied deference to the state court decision denying Torres's claim." *Torres v. Bauman*, 677 F.

7

App'x 300, 302 (6th Cir. 2017); *cf. Winfield v. Dorethy*, 871 F.3d 555, 559–64 (7th Cir. 2017) (rejecting notion that the warden can agree that the state court did not adjudicate a claim "on the merits" and that the federal courts of appeal "have flatly held [that § 2254(d)] cannot be waived"); *Moore v. Mitchell*, 708 F.3d 760, 782, 784 (6th Cir. 2013). The Court of Appeals remanded "to allow consideration of Torres's claim of ineffective assistance of counsel during plea bargaining without application of the deferential framework imposed by 28 U.S.C. § 2254(d)." *Torres*, 677 F. App'x at 303.

**II.**

Before diving in, it helps to be clear about what is not at issue. The Warden has not asserted that Torres' claim about Farah is procedurally defaulted because he did not raise it on direct appeal. To the contrary, the Warden explicitly says that (appellate counsel) Archer's effectiveness is not at issue. (R. 31, PageID.839.) And the Warden has conceded that if Farah told Torres that his sentence following trial would be the same as his sentence under the plea deals, then Farah was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). (*See* R. 31, PageID.827–828.) And given the disparity between a sentence under either plea deal and Torres' actual sentence, the Warden has also conceded that Farah's advice, if given, was prejudicial under *Strickland*. (*See id.*)

So the question before this Court is both narrow and purely factual: Did Farah advise Torres that a sentence following a conviction at trial would be essentially the same as a sentence following a plea of guilty pursuant to the prosecution's offers?

If the Court were to ignore certain portions of Torres' two affidavits, and focus solely on his testimony during the evidentiary hearing and much of the remainder of the record, it might answer this question in favor of Torres. Farah has virtually no recall of Torres' case, let alone what he told Torres about the prosecution's plea offers. (*See* R. 30, PageID.763–764.) Archer also had

8

little memory of Torres' case and could not recall whether Torres had told him about Farah's advice. As for the prosecutor, while he did remember making two plea offers with terms similar to the plea Torres claimed he was offered, the prosecutor was not present when Farah and Torres discussed the offers. So he, too, cannot say what was said. In other words, as of this date, Torres is the only person who claims to know what Farah said. And Torres has consistently averred that Farah told him that he would receive the same amount of prison time following a guilty plea as following a jury conviction.

That said, the Court is troubled by when Farah's poor advice first came to light and the significant inconsistencies in Torres' positions. If Farah had in fact advised Torres that he would receive the same sentence under the plea deals as he would after a jury conviction, then once Torres received a sentence six times longer than he would have received under the first plea offer (or three times more under the second), it seems that Torres would have complained to someone, likely anyone, about Farah's advice. Yet he did not say anything during the sentencing. And a claim based on Farah's alleged advice appears nowhere in Archer's notes of their one and only meeting. And the claim appears nowhere in Torres' brief to the Michigan Court of Appeals. And the claim appears nowhere in Torres' *pro per* brief to the Michigan Supreme Court. Yet before both the Michigan Court of Appeals and the Michigan Supreme Court, Torres argued that Farah was ineffective in other ways (he raised three such claims in his *pro per* brief to the state high court). The first time a claim based on Farah's plea advice appears in any legal filing is in Torres' motion for relief from judgment—a year-and-a-half after Torres was sentenced. Torres testified that when he heard Judge Noe's sentence, he was "shock[ed]." Yet, apparently, that strong reaction did not prompt him to tell appellate counsel or the prison legal writers that prepared his brief to the Michigan Supreme Court.

9

True, Torres has explained why his complaint about Farah's plea advice was omitted from his two direct-appeal briefs. Problem is, that explanation has changed over time.

At the evidentiary hearing, Torres provided the Court with one explanation. He said that he did not understand the legal requirements for an ineffective-assistance-of-trial-counsel claim until he filed his motion for relief from judgment or, at least, that he did not understand that Farah's advice could amount to ineffective assistance until that time. He also stated—twice—that he did *not* tell Archer about what Farah advised, instead complaining more generally about his sentence. He further indicated uncertainty over whether he was now claiming that Archer was ineffective.

Yet this is not what Torres said before. In two affidavits, Torres stated that if Archer had informed him of his right to file a *pro per* supplemental brief in the Michigan Court of Appeals, he would have filed such a brief and raised an ineffective-assistance claim based on Farah's advice. (R. 8, PageID.256–57, 279; R. 30, PageID.728.) But how could Torres raise such a claim if, as Torres said at the evidentiary hearing, he did not then know that Farah's advice could be ineffective assistance? Further, in his 2017 affidavit, Torres stated that he did tell Archer about Farah's advice. (R. 30, PageID.728 ("I mentioned the advice I received from Mr. Farah, and I asked Mr. Archer to raise this issue on appeal.").) Similarly, in his motion for relief from judgment, Torres argued that Archer had been ineffective for not raising a claim based on Farah's advice despite being told about it. (R. 8, PageID.256–57, 275.) But how could Archer have been ineffective if, as Torres said at the evidentiary hearing, he did not tell Archer about what Farah said? And if Torres did not understand the concept of ineffective assistance of counsel until just prior to the preparation of his motion for relief from judgment, how was he able to raise numerous such claims on direct appeal? Or, if the claims were included by his prison legal writer, why was he unable to read the resulting brief and add a claim based on Farah's advice?

10

In short, while the Court is troubled by the length of Torres' sentence given the nature of the offense, Torres' explanations for not complaining about Farah's advice until well after sentencing simply do not add up. And where a criminal defendant asks a federal court to upset a state court conviction, most everything should add up. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[Federal habeas review of state convictions] . . . disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." (internal quotation marks omitted)). "[I]n a habeas proceeding the petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (internal quotation marks omitted). Torres has not carried his burden.

## III.

For the reasons given, the Court DENIES Torres' petition for a writ of habeas corpus. But reasonable jurists might debate this Court's ruling; so the Court will GRANT Torres a certificate of appealability. The Court also grants Torres leave to proceed *in forma pauperis* on appeal.

SO ORDERED.

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE

Date: December 12, 2018

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, December 12, 2018, using the Electronic Court Filing system and/or first-class U.S. mail.

                                            s/William Barkholz
                                            Case Manager